## APRIL TERM, 1892.

BUSH, ET AL., APPELLANTS, v. KOLL, APPELLEE.

CONTRACT FOR SATISFACTORY SERVICE—HOW CONSTRUED.

The appellee entered into a contract with the appellants, by which he was employed for one year at a stated monthly salary, and by which he agreed to give his entire attention to the business in which he was employed, and "to render good and satisfactory service;" *held* that his employers might discharge him at any time his services were unsatisfactory to them, without incurring liability in damages. The contract required performance not only of such services as his employers ought to have been satisfied with, but such as actually were satisfactory to them. BISSELL, J., dissenting.

*Appeal from the District Court of Arapahoe County.*

THE facts are stated in the opinion of the court.

Messrs. TELLER and ORAHOOD, for the appellants.

Mr. GEORGE F. DUNKLEE and Mr. O. E. JACKSON, for appellee.

RICHMOND, P. J., delivered the opinion of the court.

By the complaint in this case it is alleged that the plaintiff entered into the defendants' employment for the term of one year, in pursuance of a contract in writing which is in words and figures as follows:—

"This agreement made in duplicate, this 20th day of August, A. D. 1888, between W. H. Bush, and W. S. Morse, partners under the firm name of 'Bush & Morse,' parties of the first part, and John Koll, of Denver, Colo., party of the second part.

"Witnesseth, that the said parties of the first part have

this day employed John Koll as chef at the Windsor Hotel, for the term of one year, at a monthly salary of one hundred and thirty dollars ($130).

"The said party of the second part agrees to give his entire attention to the business for which he is employed, and to render good and satisfactory service.

"In witness whereof, the parties have hereunto set their hands and seals this day and year above written.

"(Signed,)

WILLIAM H. BUSH,  (SEAL.)
W. S. MORSE,      (SEAL.)
JOHN KOLL,        (SEAL.)"

On the 20th day of August, 1888, the plaintiff entered the service of the defendants under the contract, and so continued in their service until the 9th day of February, 1889.

On the 9th day of February, 1889, defendants without cause discharged the plaintiff and have since refused to employ him for the remainder of the term mentioned in the contract.

That thereby the plaintiff has lost the wages which he would have obtained from said employment and which the defendants have wholly refused to pay, and the plaintiff has been unable to obtain other employment, wherefore he demands judgment in the sum of $827.66 besides costs.

Defendants answer, admitting that they entered into the contract substantially as stated in the complaint, but deny that the plaintiff faithfully discharged his duties according to the contract, or that he performed all or any of the terms or conditions of the contract on his part, or that he was ready or willing to continue in such service or to comply with all or any of the conditions of the contract; deny that on the 9th day of February, 1889, the plaintiff was ready or willing to remain in such service or to perform the conditions of the contract, or that they refused to suffer plaintiff to continue in their employ; deny that they wrongfully discharged him or that they refused to re-employ him for the term mentioned in the contract.

VOL. II—4

They further allege that at the time plaintiff quit their employment they paid him in full for all services rendered.

Defendants by further answer and counterclaim allege that the plaintiff while so engaged in defendants' service as chef, and about the time when dinner was being prepared for the guests of the hotel, wrongfully and fraudulently refused to go on with his work, and to discharge his duties under said contract, and aided, abetted and counseled the other employees of defendants then engaged in the kitchen and dining room of the hotel to refuse to work for defendants. This defense sets out the number of guests in the hotel, the number of employees; and, that by reason of the acts of plaintiff they were greatly inconvenienced and were necessitated to employ other servants, wherefore they claim damages in the sum of $500.

They further allege by way of defense, upon information and belief, that the plaintiff was able to obtain further employment in the line of his vocation as chef in a hotel.

The cause was tried to a jury, and judgment rendered for the plaintiff in the sum of $413.83.

The testimony in the case seems somewhat conflicting, but we do not conceive it to be necessary to set it out fully in this opinion.

Koll testifies that he was discharged without cause; that he was performing the services faithfully under his contract, and as he believed, giving entire satisfaction.

From the testimony of Mr. Bush it appears that his services were not satisfactory; that owing to the fact that the defendants had concluded to change the character of the cooking apparatus from a coal range to a gas range, the plaintiff became dissatisfied, and growing out of this change he so conducted himself and so run the culinary department of the hotel as to impose extravagant costs for gas upon the defendants; that they protested, and he claimed that he was doing the best he could. They insisted that experience and examination, and their personal observation of coal ranges and gas ranges in eastern hotels had thoroughly demon-

strated to them that the gas arrangement was infinitely cheaper and better for hotel service.

Mr. Bush testified that up to the time we made the change of cooking apparatus the service in the kitchen was satisfactory, after we made the change everything went wrong; there was continual trouble in the kitchen, something would be underdone or overdone. I found the burners stopped up with grease. All of my men were under Koll's direction and charge, he was the head of the department. He was chef. Up to the time of the change in the range the service was satisfactory, after that and up to the 9th of February, it was very unsatisfactory, there was a continual jar.

Mr. Morse, the other defendant, testified that after the gas range was put in there was nothing satisfactory about Koll's service or about the kitchen, it was a continual round of trouble all the time, everything was unsatisfactory; the amount of gas used was three times the amount that the manufacturers of the range guaranteed would be necessary to do this same work.

There is considerable testimony on both sides of this controversy with reference to the capacity and utility of ranges to roast meats, cook potatoes, hard and soft boiled eggs, and in fact all of the usual articles that are enumerated upon the hotel menu or bill of fare.

But with all this I think we have nothing to do. Here is a plain, simple, unambiguous contract, susceptible of easy construction, so simple that he who can read and write ought to be able to understand.

The contract is absolute and specific; by its terms plaintiff covenanted that his work should be *satisfactory*, not to himself, but to his employers. That it was not satisfactory is shown by the evidence of defendants and is corroborated by that of plaintiff. Had plaintiff's services been eminently satisfactory to his employers, but his position unsatisfactory to himself he could have quit and they would have been remediless. To retain him in a state of revolt and while

influencing and demoralizing his subordinates was impossible.

It is true that this agreement says that John Koll is employed for the term of one year at a monthly salary of $130. It is equally true that the other part of the agreement says that he shall give his entire time and attention to the business for which he is employed, and render satisfactory service. Getting down then to the understanding of the individuals when this contract was executed, without utilizing technicalities, I do not think there is any escaping the conclusion that the parties to the contract well understood what they were doing. The testimony shows that Koll had been in the employ of the defendants before; that he had rendered satisfactory service; that he was expected to render satisfactory service. In other words, he was to devote his entire time and attention, as well as his artistic talent, to the service of the defendants, but when that service proved unsatisfactory it was the right of either party to terminate the contract—it was mutual. If this be not true I am at a loss to understand what part the last clause of this contract plays in this drama between masters and servant. That the service was unsatisfactory is demonstrated by the testimony of Bush and Morse. Who else could testify—who else could say whether or not the service was satisfactory. Can it be argued or insisted that Koll was employed to act as chef of this hotel, to manage and control the kitchen and its employees in his own way without regard to the manifest wishes or directions of the defendants, and that when the defendants gave certain instructions concerning the methods and manner of his employment, that he could say I am the servant, but I am employed for a year and for that one year I propose to exact my salary and compel you, regardless of your wishes, to submit to my management and my dictation, to my manners and my methods in running this hotel. I care nothing for your guests or your hotel enterprise, as chef for one year I propose to remain.

It may be argued that the masters in this case were fully

protected, under the general rule governing master and servant, from any such theory as this ; that when he failed to perform his services promptly as chef of that hotel, the law would protect the defendants in discharging him.     I claim in answer to this that it is the right of the defendants under the contract and the law to determine when that service is satisfactory and when it commenced to be unsatisfactory.

In *Zaleski v. Clark*, 44 Conn. 223, Carpenter, J.; says :— " Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make.     Whether the contract is wise or unwise, reasonable, or unreasonable, is ordinarily an immaterial inquiry.     The simple inquiry is, what is the contract; and has the plaintiff performed his part of it? "     This was a case where the plaintiff undertook to make a bust which should be satisfactory to the defendant. " The case shows," to use the language of the judge writing the opinion, " that she was not satisfied with it.     Hence the plaintiff has not yet fulfilled his contract.     It is not enough to say that she ought to be satisfied with it, and that her dissatisfaction is unreasonable.     She, and not the court, is entitled to judge of that.     The contract was not to make one that she ought to be satisfied with, but to make one that she would be satisfied with."

It seems to me that this reasoning is applicable to the case at bar.

In *Brown v. Foster*, 113 Mass. 136, Devens, J., rendering the opinion of the court said :—" There was evidence at the trial to show that the contract between the parties was an express contract, and by the terms of it the plaintiff agreed to make and deliver to the defendant upon a day certain a suit of clothes, which were to be made to the satisfaction of the defendant.     The clothes were made and delivered upon the day specified, but were not to the satisfaction of the defendant, who declined to accept and promptly returned the same.     * * *     And even if the articles furnished by him were such that the other party ought to have been satisfied with

them, it was yet in the power of the other to reject them as unsatisfactory. It is not for any one else to decide whether a refusal to accept is or is not reasonable, when the contract permits the defendant to decide himself whether the articles furnished are to his satisfaction. * * * When an express contract like that shown in the present case was proved to have been made between the parties, it was not competent to control it by evidence of usage. It may be that the very object of the express contract was to avoid the effect of such usage, and no evidence of usage can be admitted to contradict the terms of a contract, or control its legal interpretation and effect."          •

In the case of *Daveny v. Shattuck*, 9 Daly, 66, it was held that where " A servant was employed upon trial for a week, with a promise that, if she suited, the employment would be continued through the summer months and until September 1st. Before the end of the week, the employer having declared that she suited, the servant said : Then, as long as I suit you, there is no fear for the summer months ; to which the employer responded affirmatively. Held, that there was not an absolute employment until September 1st, but merely a conditional one, dependent upon the servant continuing to suit the employer."

In the case of *Evans v. Bennett*, 7 Wis. 351, it was held that, " When one party agrees to work for another at a certain rate of wages per month, and either party is at liberty to put an end to the agreement at any time, the servant is entitled to recover at the stipulated rate for the time he serves, though he quits of his own motion."

The foregoing case is certainly analogous to the case at bar with this exception, that in that one there was no written contract, but an oral agreement, and in this case there is a written agreement, an express contract whereby the individuals obligated themselves, first, the plaintiff to render satisfactory services ; and, second, for which services so satisfactorily rendered the defendants are bound to pay at the rate nominated in the agreement for the period of one year.

It is true that the jury were instructed by the court that if they believed from the evidence that the services of Koll were unsatisfactory to the defendants they should find for the defense.   In this the trial judge took the view of the contract that I am now endeavoring to demonstrate as being the correct one.   Yet notwithstanding the instructions, notwithstanding the testimony of Bush and Morse, notwithstanding the fact that Koll was discharged, notwithstanding it appears that his services were not satisfactory to the defendants, the jury still taxed the defendants for the entire year or the term specified in the contract.   Candidly, I think that there is no case that has come before my inspection and examination wherein the verdict of the jury demonstrates the fact to be that their conclusion was the result of prejudice.   For, as is well said in *Zaleski v. Clark, supra*, the defendant and not the court is entitled to judge of whether or not the work is satisfactory.   And in keeping with this declaration the defendants by the contract have the right of terminating the contract when the services were not satisfactory.   I do not think it necessary to consider the counterclaim as, in my judgment, under the testimony it is without merit.   I am clearly of the opinion that the verdict of the jury is unsupported by the evidence, and that the judgment of the court should be reversed.

REED, J., concurred.

BISSELL, J., dissenting.

I should be content to withhold my concurrence in the conclusions announced in this case, but for the opinion expressed as to the proper rule to be applied in the construction of the contract contained in the record.   The apparent necessity to state what I believe to be the law on this subject leads me to fully state my views concerning this controversy.

The contract is set out in the principal opinion.   The issues raised by the pleadings can be fairly gathered from it

if it be read strictly with a view to ascertain what the contention was. Unless attention be specifically directed to that point, what I believe to be an important element in the settlement of the dispute is liable to be overlooked. I will therefore first state what I believe to be the issue, and demonstrate as far as may be the mistake committed by the trial court in submitting one question to the jury, and the absence of right on the part of the appellants, Bush & Morse, to insist that the judgment was wrong because against what they contend is the law, in which position they are sustained apparently by the decision of this court.

It is their contention that the contract is one, substantially one, at their will and option, and that therefore no right of action could accrue to the plaintiff if they saw fit to terminate his employment. I shall discuss the legal aspect of this proposition subsequently. At present I am only concerned with a statement of the situation of the case with reference to this issue. There is no such element in the controversy presented to this court for adjudication. The suit is an action by Koll to recover his wages for the balance of what he says is an unexpired term of employment. He alleged the contract, a rendition of services to a specified date, a discharge, and a consequent damage, shown by proof of the amount of his unearned wage, with efforts to obtain employment and a failure. To this cause of action there might evidently be several defenses. In fact, there was but one, and this rested in a denial of the discharge. The denial was undoubtedly coupled with other denials of the various elements or items which on proof would demonstrate the plaintiff's injuries. This simple statement shows that there was no issue presented relating to the right of the defendants to end the contract at their will, and for this reason, if for no other, the cause cannot be reversed on the basis adopted.

I maintain further, that if it be conceded, *ex gratia*, that the case presented the question, the appellants are still concluded by the findings of the jury, under the testimony and the instructions of the court. I am not prepared to overturn

a well settled and thoroughly established rule of the courts of this state, which inhibits appellate tribunals to interfere with the verdict of a jury when it rests upon conflicting testimony. If it be insisted that the case is one exhibiting gross prejudice, the proposition should be made the subject of satisfactory demonstration. It is neither demonstrated in the opinion, nor do I believe the case fairly stated will admit it. Bearing in mind that this is not a suit to recover wages earned during a period of service, to which there was a defense of unsatisfactory service, and that it was not a case of a suit for wages accruing during an unexpired term where the defense was a rightful discharge under the contract, let us see how the case stands on the proof under this rule. Premising that of necessity there could be no evidence of dissatisfaction with services which had never been rendered, it is possible that the case would admit of testimony to show the performance of the contract by the plaintiff during the time he worked. This however is exceedingly doubtful, because the law presumes that the service was satisfactory, since there was no termination of the contract, and no attempt on the part of either to end the engagement. This presumption of law was well supported by the plaintiff's own testimony, who made oath to the expressed satisfaction of the firm. It cannot be said with strict observance of the language and force of the printed testimony that this was denied by Bush & Morse. The only testimony tending in this direction is testimony of this description : " I put this gas range in, and there seemed to be a disposition on the part of every one in the kitchen to fight it. *They* were not satisfied; there seemed to be a disposition on the part of the chef to fight the range. Up to the time we made the change of ranges the service in the kitchen was satisfactory. Mr. Koll was perfectly satisfactory to me until after the introduction of this range." Mr. Morse's testimony upon this subject was substantially identical. Considering the character of this testimony, strengthened by the legitimate deduction that there was evidently general trouble in the kitchen, with the

history of what transpired at the time of the alleged discharge, and the jury might easily have found that Koll's services as cook had been entirely satisfactory, and that the only trouble in the world was with the employees generally because of the change in the implements furnished. The jury would have a right to conclude from the fact that there had been no attempt to end the employment prior to the time of the discharge, that there was in fact no dissatisfaction with the services which Koll rendered as a chef in the hotel. This question was submitted to the jury under an instruction which said: "If you believe from the evidence that the defendants discharged the plaintiff because they were really dissatisfied with his services in the line of his employment, then you must find for the defendants, and it is not necessary that the defendants should have any cause for such dissatisfaction." No charge on the subject, if one thus expressing the law were ever admissible, would have more fairly left to the determination of the jury the question of dissatisfaction. The evidence of dissatisfaction was extremely meager, uncertain, not clearly expressed, and not satisfactorily or definitely established. It was controverted by proof of the defendant's declarations on the subject, of the circumstances of the transaction, by the natural and legal presumption springing from the absence of any attempt to exercise the right of discharge. The court by a most eminently fair instruction, more favorable to the defendants than the case entitled them to, left it to the jury to find the fact on this subject. The verdict was against the defendants and we are without right to interfere with that finding.

Whatever weight may be given to this position, or however little force there may be in these suggestions, the appellants are not entitled to have the case reversed because the judgment is not supported by the law. I cannot admit that the contract is susceptible of the construction which the court puts on it, nor do I believe that the law governing contracts of this description is accurately stated. The opinion states two rules which are frequently invoked by the courts

as guides in the construction of contracts. They are to be interpreted according to the ordinary and usual signification of the words which they have used, due regard being had to the evident intention of the parties. Everybody must concede these general principles, but wide differences may occur when it comes to the matter of their application. Nothing seems to me clearer than that there has been a misapprehension, and a misapplication of the rules in the present case. To ascertain the true significance of a contract courts may not, as critics and philologists, look alone to the words of it. They are of deep significance, but the work of interpretation follows always that of criticism. Its true end is to find out the intent of the instrument, the sense of the words if they are ambiguous, and learn the purpose when the words express it obscurely. The rule of interpretation known as the rational, is as firmly fixed in the law, as the one more commonly invoked—the literal. As Rutherford puts it in his Lectures, page 104, " Where words do not express the intention perfectly, but either exceed or fall short of it, so that we are to collect it from probable or rational conjectures, this is rational interpretation." In the endeavor to learn what this contract is, and what force shall be given to that word " satisfactory," we must inquire whether it is so used in the contract, and was inserted under such circumstances that it evidently expresses the intention of the parties, and is to be taken according to its literal meaning. The line which we are called upon to run must be fixed by setting our intellectual pegs as a surveyor drives his stakes, and we must proceed from point to point until the end is arrived at. According to the rules of rational interpretation, words are to be taken according to their ordinary sense, unless it be manifest that when they are thus used they are given a broader meaning than will accord with the intention of the parties, and may therefore under well settled rules be restricted in their signification. Potter's Dwarris on Statutes, pp. 194–196, 197.

There is another thoroughly well established principle of construction by which that compelling the courts to take

words in their ordinary meaning is limited and modified, which is, that every contract must be so construed as that all parts of it will stand; for the law leads to the enforcement of every part, rather than the destruction of any, *ut res magis valeat quam pereat.* These recognized rules of interpretation greatly simplify the difficulty of settling the true meaning of the present agreement.

It consists of two parts: first, there is the engagement of the employers; second, there is the correlative expressed obligation of the employee. It must be observed and borne in mind, that the contract by Bush & Morse is not on condition, not with a proviso, not subject, otherwise than as the law makes it, to the promise of the employee. This distinction is of very great importance when it comes to the consideration of the authorities cited in the principal opinion. Bush & Morse hired Koll for one year at $130 per month. That was their contract. There is no room for construction to ascertain what their term was, since they definitely entered into an agreement to employ Koll for one year at a fixed wage. Under the rule invoked by the majority, that a contract is to be construed according to its terms, manifestly that part of the engagement is definite and certain. It contains no condition, it is without a proviso except what may be contained in the promise of the employee. This presents the only question of the slightest difficulty. Koll agreed on his part to enter the service, to devote his entire time thereto, and to render good and satisfactory service during the time. Here then are two engagements on the part of two different persons, employers and employee, to do certain things. One of hiring for a year for a wage, the other an agreement to perform the service for which he is hired, for the term, and in a certain fashion. The contracting parties chose possibly an unfortunate word to express their intentions, but it seems comparatively easy to arrive at their intention when the circumstances and whole paper are considered. If the engagement had been to devote his entire time, and give his best endeavors to the faithful performance

of his duties as chef, none could have imagined that he had undertaken to do anything except that which the law would imply from the acceptance of the employment. Evidently this was what the parties contemplated. If such is their manifest intention, the word "satisfactory" must be taken to possess simply this meaning, to wit, that Koll shall faithfully perform, according to his best ability, the services which he was hired to render. If he thus performs them, in the law it must be said that those services are satisfactory, and that the employers are without right to complain. The trouble with the principal opinion is, that they give to the word " satisfactory " a force beyond that even of its ordinary signification. It is made operative to destroy the promise made by the employers, since if it be held that the employee's promise made in this form confers upon the hirers the right to discharge at will, it utterly destroys the year's engagement into which they antecedently entered. In violation of the maxim *ut res*, etc., we have used one term of the agreement and one promise to destroy the prior term. This can never be done. Wherever clauses contain words that are contradictory, and they admit of two senses " the court will adopt that construction which will best carry the just and reasonable intention into effect." It seems to be very clear that there can be no legitimate construction of this contract, which will transform the expressed yearly hiring of the servant into a hiring at will, which will give to the employers the right to discharge without an allegation of the existence of a legal cause which must be established by competent proof. It brings the contract into too close an analogy with Lord Bacon's description of Henry VII laws a " *nemo scit*," to hold otherwise would make contracts but traps for the unwary, and subject them to the uncertainties which prevailed, when according to the same philosopher, the magistrate was able to produce a manuscript decision of an unreported case, and say " Lo ! I have the law in my side pocket ! " 2 Coke's Institutes, 533.

According to the law as it is written, the position of the

court seems not to be sustained by the authorities. All the cases which are cited are either cases of hiring for an uncertain term and at the evident will of the employers, or else they are agreements to make sundry and divers things to the satisfaction of the persons for whom they are to be constructed. All the cases cited will be found to embrace matters purely of taste, and involve distinctively a selection according to the vendee's conception of what such things ought to be. They relate to busts, clothes, and cases of that description, and, so far as I can find in the books, there are no other cases announcing a similar rule save those where work is to be done to the satisfaction of a body which is clothed with a discretionary and *quasi* judicial power to determine the character of what had been performed. Wherever the contract is one of hiring, or where it includes the production of machinery, or the sale of goods manufactured, or to be manufactured, the rule is a totally different one. With respect to contracts concerning such matters, well considered cases, based upon sound reason and logic, suited to the circumstances of the parties and their evident intention, have held that contracts may not be so construed as to give either party the right at his whim and caprice to reject that which he has contracted to purchase, or to refuse to pay the price of what has been supplied, under the agreement that he shall be satisfied therewith.

In cases of this sort the true rule is " that which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with." *Duplex Safety Boiler Co. v. Garden et al.*, 101 N. Y. 387; *Clark v. Rice*, 46 Mich. 308; *Daggett & Graves v. Johnson*, 49 Vt. 345; *Roy v Goings*, 96 Ill. 361; *Braunstein v. Insurance Co.*, 1 East & Smith, 783, (101 E. C. L. 782.)

In the latter case proof of loss claimed to be within the insurance was to be made satisfactory to the directors, and the question was, whether they could arbitrarily reject what had been furnished if it was ample according to the contract of the parties to establish that which they were called upon

to prove.   The court held that the clause must receive a reasonable construction, and that it would only bind the parties to produce such evidence as the directors might reasonably require.   As one of the judges well put it " the putting such a construction on a stipulation like this is opposed to the general rule, that when it is agreed that an act is to be done to the satisfaction of a party it must be understood to mean reasonably to his satisfaction."   Other judges put the decision upon somewhat similar *bases*, and held that the parties would have a right to insert whatever condition precedent they chose, but said if the condition is destructive of any right conferred by the contract, it must appear to have been so intended by the parties.   Viewed in the light of these principles and these authorities, there seems to me to be but little ground for the construction which the court puts upon this agreement.   I am unable to concur in any such conclusion.   According to my views of the law, the appellants have maintained no error which entitles them to a reversal of the cause, and it should be affirmed.

*Reversed.*